# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-003344-CNS-SBP

EINSTEIN BROS. BAGEL FRANCHISE CORPORATION and
EINSTEIN AND NOAH CORPORATION,

      Plaintiffs,

v.

J.F.C. MANAGEMENT HOLDINGS, LLC, and
RAMONA D. HALL,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Susan Prose, United States Magistrate Judge**

      This matter comes before the court on Plaintiffs' Motion for a Default Judgment Against All Defendants ("Motion" or "Motion for Default Judgment), ECF No. 14, which was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Order Referring Case dated March 5, 2025. Having now reviewed the Motion, the evidence in support of the Motion, and the applicable law, this court respectfully **RECOMMENDS** that the Motion for Default Judgment be **GRANTED** for the following reasons.

## I.      BACKGROUND

      Both plaintiff Einstein Bros. Bagel Franchise Corporation ("EBBFC") and Einstein Corporation ("ENC") are Colorado corporations with their principal places of business in Denver, Colorado. ECF 1 ¶¶ 5-6, Complaint ("Compl."). Defendant J.F.C. Management Holdings, LLC ("JFC"), a Florida limited liability company with its principal place of business

in Miami, Florida, operated an "Einstein Brothers Bagels" restaurant at 155 NW 6th Street, Miami, Florida 33136 (the "Restaurant") pursuant to the terms of a license agreement (the "Agreement"), ECF No. 1-2, with EBBFC. Compl. ¶¶ 2, 5. Defendant Ramona Hall is a citizen and resident of Florida who served as a member of JFC. *Id*. ¶¶ 8-9. Ms. Hall also served as a guarantor of JFC's obligations under the Agreement. *Id*. ¶ 19.

Plaintiffs assert that, beginning in July 2024, JFC ceased paying the required royalties under the Agreement, leading EBBFC to terminate the Agreement on November 9, 2024. *Id*. ¶¶ 27-29. Notwithstanding the termination, Plaintiffs aver that "Defendants have continued to operate the Miami Restaurant beyond the termination date" while using the Einstein Brothers' "Marks, System, and Confidential Information." *Id.* ¶ 30.

Plaintiffs assert seven causes of action against both Defendants: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (3) a claim labeled "common law trademark and service mark infringement"; (4) a claim labeled "common law unfair competition"; (5) a claim for breach of contract based on "failure to pay fees"; (6) a claim for breach of contract based on "failure to comply with post-term obligations"; and (7) a breach of contract claim seeking attorney's fees and costs. *Id*. ¶¶ 35-77.

Plaintiffs served the Summons and Complaint on Defendants JFC and Hall on December 18, 2024, ECF Nos. 7, 8, making a responsive pleading due on or before January 8, 2025. Neither Defendant answered or otherwise responded. Plaintiffs moved for an entry of default against Defendants on January 23, 2025, ECF No. 10, then filed an amended motion for entry of default on the same day, ECF No. 11; on February 20, 2025, the Clerk of Court denied the initial

motion, ECF No. 12, but granted the amended motion and entered default against each of the Defendants. ECF No. 13.

Plaintiffs filed the Motion on March 4, 2025. Plaintiffs seek $66,640.78 for amounts due and owing for contractual royalties through November 9, 2024, the date of franchise termination, ECF No. 20-1 ¶ 2; $24,686.21 in contractual pre-judgment interest from the date of each royalty default through April 3, 2025, *id*. ¶ 3; $14,254.13 in damages for an ongoing royalty for the Defendants' holdover use of Plaintiff's Marks and Trade Dress through April 3, 2025, *id*. ¶ 4; interest on all unsatisfied portions of the Court's monetary judgment at the rate of 18% per annum from April 3, 2025 until paid in full; attorney's fees and costs in the amount of $41,917.80, *id*. ¶ 6; and certain injunctive relief. *Id*. ¶ 5. In support of the Motion, Plaintiffs submitted a copy of an email chain reflecting their belief that Defendants continued to use the Marks, System, and Confidential Information, ECF No. 14-1; a calculation of the damages sought by Plaintiffs, ECF No. 14-2; and a proposed order. ECF No. 14-3.

After the Motion was referred to the undersigned Magistrate Judge for a recommendation, ECF No. 16, Plaintiffs moved for a hearing regarding the Motion. ECF No. 17. The court granted this motion and set an evidentiary hearing on the Motion for April 3, 2025. ECF No. 19. At the hearing, the court took testimony from Matt Copenhaver, a Chief Development Officer for Bagel Brands, the parent company of Plaintiffs, and admitted fourteen exhibits offered into evidence, as well as an amended version of the proposed order (the "Proposed Order"), ECF No. 20-1, that had been submitted to the court by Plaintiffs via email prior to the hearing.

## II.    LEGAL STANDARDS

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a party may apply to the court for a default judgment after a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(a), (b)(2). A court may conduct hearings to conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

There is no right to a default judgment, and whether to enter a default judgment is within the discretion of the court. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment.")). In determining whether a default judgment is warranted, the court must first consider whether it has jurisdiction over the subject matter and the defendants. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986); *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014). It is well established that a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action. *United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1309 (10th Cir. 1994). Plaintiff bears the burden of establishing jurisdiction.

The court then must consider whether the well-pleaded factual allegations in the complaint support a judgment on the claims against the defaulting defendants. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998) ("a party in default does not admit mere conclusions of law"); *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206–08 (vacating district court's entry of default judgment because the

pleadings were insufficient to support the judgment). "There must be a sufficient basis in the
pleadings for the judgment entered." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. The well-pleaded
facts of a complaint are deemed true, as are any undisputed facts set forth in affidavits and
exhibits. *See Grady v. Swisher*, No. 11–cv–02880–WYD–KLM, 2014 WL 3562794, at *12 (D.
Colo. July 18, 2014); *Samuels v. Feiner Trinh, Int'l*, LLC, No. 10–cv–02574–MEH, 2012 WL
3545275, at *1 (D. Colo. Aug. 15, 2012). The court may also take evidence at a hearing to
establish the truth of any allegation. Fed. R. Civ. P. 55(b)(2)(B). In addition, the entry of default
does not establish the amount of damages that is reasonable. Damages may be awarded only if
the record adequately reflects the basis for the award as supported by the evidence in the record.
*Klapprott v. United States*, 335 U.S. 601, 612 (1949); *Mathiason v. Aquinas Home Health Care,
Inc.*, 187 F. Supp. 3d 1269 (D. Kan. 2016).

## III.     FINDINGS OF FACT

The following facts are drawn from the Complaint; information and filings on the court's
docket; and evidence presented at the April 3, 2025 hearing.

As stated above, Plaintiffs EBBFC and ENC are Colorado corporations with their
principal places of business in Colorado. Compl. ¶¶ 5-6. Defendant JFC is a Florida limited
liability company with its principal place of business in Miami, Florida. *Id*. ¶¶ 2, 5. Defendant
Ms. Hall is a citizen and resident of Florida. *Id*. ¶¶ 8-9.

EBBFC entered into the Agreement with JFC on July 18, 2018. Agreement at 3 (ECF
pagination). The Agreement governed JFC's operation of the Restaurant. Compl. ¶ 19. The
Agreement was executed by Ms. Hall as managing partner of JFC. Agreement at 30 (ECF
pagination). Ms. Hall also executed a guaranty (the "Guaranty"), Ex. A to Agreement, making

her a guarantor of JFC's obligations, in connection with executing the Agreement. *Id*. at 33 (ECF pagination).

ENC owns the following trademarks: United States Patent and Trademark Registration Nos. 2060493, 2092522, and 2146983; and two federal registrations for Plaintiffs' circle logo, Reg. Nos. 2211548 and 2194140 (collectively, the "Marks"). Compl. ¶ 12. ENC has licensed EBBFC to use the Marks and to sublicense the Marks to franchisees. *Id*. The Agreement, among other things, licenses the use of these Marks to JFC for use in the Restaurant. *See, e.g.*, Agreement at 3 (ECF pagination). The Agreement also regulates the use of Plaintiffs' "System," defined as "a distinctive and comprehensive system, which includes business formats, methods, designs, layouts, signage, standards, and specifications . . . ." *Id*. Additionally, in Section 6, the Agreement regulates the use of Plaintiffs' "Confidential Information," which is defined as certain confidential information "relating to developing and operating Restaurants, including (1) specifications for Trade Secret Products and Branded Products; (2) training and operations materials and manuals; (3) methods, formats, specifications, standards, systems, procedures, Product preparation techniques, sales and marketing techniques, knowledge, and experience used in developing and operating Restaurants; (4) marketing and advertising programs for Restaurants; (5) knowledge of specifications for and suppliers, Trade Secret Products, Branded Products, any designated point-of-sale system, and other products and supplies; and (6) graphic designs and related intellectual property." "Trade Secret Products" are products "prepared according to specified recipes, standards, and procedures," while "Branded Products" are products that are "branded and/or packaged using the Marks." Agreement at 3 (ECF pagination).

Section 3(B) of the Agreement requires JFC to pay a royalty fee on the 15th day of each month in the amount of 6.5% of the gross sales made by the Restaurant (the "Royalty Fee"). Section 3(C) also requires JFC to pay interest for any royalty fee not timely paid in the amount of 1.5% of the outstanding fee per month. Compl. ¶ 23. Section 13(B)(6) of the Agreement states that if JFC "fail[s] to timely pay the Royalty Fee or any other obligations or liabilities due and owing to [EBBFC or its] affiliates . . .", that JFC is in default and EBBFC has the right to terminate the Agreement. Section 13(C)(1) provides that JFC has "thirty (30) days after [JFC's] receipt from [EBBFC] of a written Notice of Termination within which to remedy any default hereunder, and provide evidence thereof to us," but that if JFC were to "fail to correct the alleged default within that time, this Agreement will terminate without further notice to you effective immediately when the thirty (30) day period expires."

Section 14(B) of the Agreement obligates JFC to act as follows upon termination of the Agreement:

> [You must] (1) immediately cease operation of the restaurant and all identification and association with the [EBBFC] brand or any of the Marks; (2) immediately cease using any of [EBBFC's] Confidential Information it may appear and return to [EBBFC] (or, at [EBBFC's] option, destroy or electronically delete) all electronic or hard-copy documents in your possession that contain Confidential Information; (3) at your own cost and without any payment from [EBBFC], destroy or deliver to [EBBFC] within fifteen (15) days all signs, marketing materials, forms, and other materials we request containing any Mark; (4) within the timeframe [EBBFC] specif[ies] and at your own expense, make the alterations to the Restaurant we specify in our Operations Manual (or otherwise) to cease further association with the [EBBFC] brand or any of the Marks; and (5) comply with all other applicable provisions of this Agreement . . . .

The Agreement contains a forum selection clause, Section 17(G), which reads: "[s]ubject to the requirements of applicable law and Section 17.E and 17.F above . . . [a]ny action brought

by us [EBBFC] against you [JFC] in any court, whether federal or state, may be brought within the state and judicial district in which we maintain our principal place of business." Section 17(E) states that "the parties agree to submit any claim, controversy or dispute arising out of or relating to this Agreement . . . to non-binding mediation before bringing such claim, controversy or dispute [ ] to a court." However, Section 17(E) also states that "[w]e may bring an action under the applicable provisions of this Section 17 without first submitting the action to mediation under this Section 17.E: (1) for injunctive relief; or (2) for monies you owe us." Section 17(F) states that "[n]otwithstanding Section 17.E above . . . if you breach or threaten to breach any of the terms of this Agreement, we will be entitled to [ ] injuncti[ve] relief restraining such breach and/or a decree of specific performance . . . ." The Agreement also contains a choice of law clause, Section 17(D), stating that the Agreement "shall be interpreted and construed exclusively under the laws of the State of Colorado . . . ."

EBBFC and JFC executed an addendum to the Agreement (the "Addendum"), ECF No. 1-3, on July 18, 2018. The Addendum provides that the Agreement will terminate ten years from the "Effective Date" of the Agreement or on the termination date of the lease for JFC's location unless the Agreement is terminated earlier in accordance with its terms. Addendum ¶ 2. The Agreement defines the "Effective Date" as July 18, 2018. Agreement at 3 (ECF pagination).

On October 9, 2024, EBBFC sent a written notice to JFC stating that JFC had ceased paying royalties to EBBFC since July 2024, in violation of the Agreement, and noting that as a result, JFC was in default. Compl. ¶ 27; *see also* Addendum. The notice stated that in accordance with Section 13(C) of the Agreement, unless JFC cured its default by November 9, 2024, the Agreement would terminate without further notice. Compl. ¶ 27. On November 6, 2024, EBBFC

again reminded JFC of its relevant obligations under the Agreement, including that JFC would have to cease using EBBFC's "Marks, System, and Confidential Information" in the event the Agreement was terminated. *Id*. ¶ 28. Defendants failed to cure the alleged default. *Id*. ¶ 29. Accordingly, the Agreement terminated as of November 9, 2024. *See id*.

Since November 9, 2024, JFC has continued to operate the Restaurant and, while doing so, has continued to use the Marks and System. *Id*. ¶ 32. While JFC removed the Marks from the façade of the Restaurant sometime during or after January 2025, *see* ECF No. 20-6, JFC had not ceased use of the Marks or Plaintiffs' trade dress, including, *inter alia*, designs, layouts, and signage, which are all defined under the Agreement as aspects of the System, in the interior of the Restaurant as of March 18, 2025. ECF No. 20; ECF Nos. 20-6, 20-7, 20-8, 20-9, 20-10, 20-11 (emails and photos taken on or after March 18, 2025, showing that the Restaurant still displays the Marks and Plaintiffs' trade dress).

Plaintiffs are now seeking the royalties they allege are still outstanding, along with interest, attorneys' fees, and an injunction preventing Defendants from continuing to use the Marks, Plaintiffs' service marks, and Plaintiffs' trade dress. *See* Proposed Order. Defendants were served with a copy of the summons and complaint in this action on December 18, 2024. ECF Nos. 7, 8. Neither of the Defendants filed an answer or other responsive motion, nor has any defendant otherwise appeared in this action.

## IV.    ANALYSIS

### A.    *Subject Matter Jurisdiction*

The court first considers whether it has subject matter jurisdiction over this action. Plaintiffs assert causes of action arising under federal law, namely violations of the Lanham Act,

15 U.S.C. § 1121 and 1125(a), for infringement of federally registered trademarks. Compl. ¶¶ 35-50. Therefore, to the extent that there are viable federal claims in this action, the court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338(a) and (b), and 15 U.S.C. § 1121. The court also has supplemental jurisdiction over Plaintiffs' "common law trademark and service mark infringement," "common law unfair competition," and various breach of contract claims pursuant to 28 U.S.C. § 1367(a), as the claims arise from the same controversy as Plaintiffs' federal claims.

      B.  *Personal Jurisdiction*

A plaintiff bears the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) (citing *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). Under Tenth Circuit standards, the personal jurisdiction inquiry involves two parts. First, this court considers whether an applicable statute governs service of process. *Id*. Next, the court considers whether exercise of personal jurisdiction comports with the constitutional requirements of the Due Process clause. *Id*. The federal Lanham Act does not provide for nationwide service. *See* 15 U.S.C. § 1051 *et seq.* Accordingly, this court looks to the Colorado long-arm statute to determine whether personal jurisdiction is proper. *CrossFit*, 69 F. Supp. 3d at 1094.

In the context of a motion for default judgment, a plaintiff "need only make a prima facie showing of personal jurisdiction if the default judgment motion is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) (cleaned up). There are two types of personal jurisdiction: general and specific. Relevant here is specific jurisdiction, which exists when a "suit

arises out of or relates to the defendant's contacts with the forum." *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1227 (D. Kan. 2020) (cleaned up). The court forgoes a lengthy recitation of the legal standards regarding specific jurisdiction because they are "irrelevant," given Defendants' consent to jurisdiction in the State of Colorado. *See Postnet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1098 (D. Colo. 2021) ("The minimum contacts analysis is irrelevant because Mr. Wu has consented to jurisdiction here").

As discussed *supra*, the Agreement contains a forum selection clause, Section 17(G), which states that EBBFC may file suit against JFC within the state and judicial district in which EBBFC maintains its principal place of business—here, Colorado—while Section 17(E) of the Agreement states that EBBFC can bring an action against JFC for injunctive relief or for monies owed without first submitting the action to mediation. Also as discussed *supra*, the Agreement contains a choice of law clause, Section 17(D), specifying that "the laws of the State of Colorado" governs the Agreement. Ms. Hall agreed to be individually bound by all of JFC's covenants, obligations, and promises in the Agreement through the execution of the Guaranty. *See* Guaranty.

Courts have long held that a party can consent to jurisdiction, *see Burger King v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *United States v. Vreeken*, 803 F.2d 1085, 1089 (10th Cir. 1986), and found similar forum selection clauses to waive a defendant's objections to jurisdiction. *See, e.g.*, *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320-21 (10th Cir. 1997); *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *7 (D. Colo. May 24, 2017) (finding in considering due process that "forum selection clauses will be enforced unless a party seeking to avoid its effect proves that

enforcement would be unfair or unreasonable"); *see also Wu*, 521 F. Supp. 3d at 1098. There is no indication that exercising jurisdiction over Defendants here would be unfair or unreasonable. Accordingly, Defendants have consented to this court's jurisdiction and have waived any objections to jurisdiction here.

Even with Defendants' consent to the forum selection clause, a court cannot obtain personal jurisdiction without proper service of process. *See Murphy Brothers, Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as a defendant.") (citation omitted). Here, the Executed Summonses represent that Ms. Hall was personally served both in her individual capacity and in her capacity as an officer of JFC on December 18, 2024. ECF Nos. 7, 8. Thus, the court finds that Ms. Hall has been properly served in accordance with Rule 4(e)(2)(A), that JFC has been properly served in accordance with Rule 4(h)(1)(B), and that the court has personal jurisdiction over both Defendants.

    *C.*  <u>*Trademark Infringement and Unfair Competition*</u>

"Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). "Both claims require the same elements: (1) a protectable interest in the Marks; (2) the use of identical or similar Marks in commerce; and (3) the likelihood of confusion arising from the use of an identical or similar Mark." *Big O Tires*, 2017 WL 2263079, at *7 (citing *Derma Pen, LLC v.*

*4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014)). "If trademark infringement is

established, a plaintiff may recover defendant's profits, damages sustained by the plaintiff, and

costs of the action as damages." *Id*. (citing 15 U.S.C. § 1117(a)).

In this case, Plaintiffs have established protectable interests in the Marks by submitting

federal registration numbers for each of them. *See, e.g.*, Proposed Order ¶ 6(iv); *see also* 15

U.S.C. § 1115; *Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir. 1962)

(observing that registration of a trademark is prima facie evidence of the validity of the mark and

of the registrant's exclusive right to use it as specified in the certificate). Therefore, this court

concludes that Plaintiff satisfies the first element of the test for trademark infringement and

unfair competition.

With respect to the third element, "[i]t is well-settled doctrine that a terminated

franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes

trademark infringement." *Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, 110 F. Supp. 3d

1057, 1077 (D. Colo. 2015), *aff'd*, No. 16–1010, 2016 WL 4743685 (10th Cir. Sept. 12, 2016).

Indeed, when a franchisee continues to use protected marks after the termination of their

agreement, "the potential for consumer confusion is greater than in the case of a random

infringer." *See id*. This danger of confusion has been determined to satisfy the likelihood of

confusion test for trademark infringement. *IHOP Franchising, LLC v. Tabel*, No. 13–2641–

KHV–TJJ, 2014 WL 1767199, at *9 (D. Kan. Apr. 15, 2014), *report and recommendation

adopted*, No. CIV.A. 13–2641–KHV, 2014 WL 1767191 (D. Kan. Apr. 30, 2014) (citing *Burger

King Corp. v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983)). Therefore, to the extent that

Plaintiff establishes that JFC continued to use Plaintiffs' Marks after the termination of the

Agreement, the third element of the test for trademark infringement would be satisfied. *See Big O Tires*, 2017 WL 2263079, at *8.

Thus, the operative inquiry facing this court is whether there are sufficient facts, taken as true, to establish the existence of the second element and its extent: here, that JFC continued the use of Plaintiffs' trademarks after the termination of the Agreement, as well as, for the purposes of assessing damages, the scope and duration of the continued use. *See id*.

The Complaint alleges that Plaintiffs continued to use the Marks and aspects of the System such as trade dress after the termination of the Agreement. Compl. ¶¶ 30-32. At the April 3, 2025 hearing, Plaintiffs sought to admit, and the court admitted, photo exhibits that Mr. Copenhaver testified showed JFC continuing to use the Marks and trade dress at the Restaurant on or after March 19, 2025, approximately two weeks before the hearing and several months after the November 9, 2024 termination. ECF Nos. 20-7, 20-8, 20-9, 20-10, 20-11. No reason has been suggested to believe that JFC planned to discontinue use of the Marks and trade dress in the two weeks before the April 3, 2025 hearing date. The allegations in the Complaint and the facts to which Mr. Copenhaver testified stand uncontroverted before the court, and this court must accept such factual allegations as true. *See Coosemans Denver, Inc. v. Red Tomato Specialty Produce, Inc.*, No. 08–cv–01074–MSK–CBS, 2009 WL 229645, at *1 (D. Colo. Jan. 29, 2009) (deeming well-pled facts as uncontested). Accordingly, the court concludes that JFC continued operating its Restaurant using the Marks and trade dress until April 3, 2025, based on the uncontroverted factual assertions and testimony.

A final default judgment cannot be entered against a party until the amount of damages has been ascertained. *See Llewellyn v. Shearson Fin. Network, Inc.*, No. 08–cv–00179–MSK–

14

KLM, 2009 WL 497865, at *2 (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)).

However, ongoing royalties normally received by the franchisor for a holdover period can be an

accurate measure of trademark damages. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d

1562, 1566–67 (11th Cir. 1986); *La Quinta Corp v. Heartland Props. LLC*, 603 F.3d 327, 341 &

n.10 (6th Cir. 2010); *KFC Corp. v. Lilleoren*, 821 F. Supp. 1191, 1193 (W.D. Ky. 1993).

The Agreement states in Section 3(B) that a six and one-half percent (6.5%) royalty on

gross sales applies to JFC. The Agreement required Defendants to file monthly reports together

with royalty payments, but Defendants have not filed monthly reports since the Agreement was

terminated on November 9, 2024. In reviewing the Agreement, the court did not find any

provision that addressed how royalties or fees should be calculated in the absence of a monthly

report. However, Mr. Copenhaver has testified that a chart provided by Plaintiffs reflects the

gross sales numbers provided by JFC in monthly reports from November 10, 2023, to April 3,

2024. *See* ECF No. 20-1, Nov. 2023 – Apr. 2024 Sales Chart. Accordingly, in the absence of

reported gross revenue for the period after the termination of the Agreement, this court finds that

looking to the gross revenue for the same period during the previous year, *i.e.* November 10,

2023 to April 3, 2024,[1] is an appropriate base upon which to calculate holdover royalties. *Cf.,*

*e.g.*, *Big O Tires*, 2017 WL 2263079, at *10 (finding that in the absence of reported gross

revenue for a two-month holdover period, the average monthly revenue for the last twelve-month

period reported was an "appropriate base upon which to calculate royalties").

Using the period from November 10, 2023, to April 3, 2024 as a base for calculating

post-termination royalties, Plaintiffs provide that the calculation of royalties for the period

---

[1] Plaintiffs specifically request holdover royalties through April 3, 2025. Proposed Order ¶ 4.

following the termination of the Agreement comes to $14,254.13. *See* ECF No. 20-13, Damages

Chart. This number is derived by adding together gross revenue for the previous year's period as

provided by Plaintiffs, then multiplying the resulting amount by the royalty rate (6.5%). *See* Nov.

2023 – Apr. 2024 Sales Chart. The court has reviewed the numbers provided by Plaintiffs for

errors and finds none. Accordingly, this court respectfully recommends that judgment be entered

in the amount of $14,254.13 for Plaintiffs' claims of trademark infringement and unfair

competition post-termination of the Agreement.

    D.  *Contract Claims*

    Plaintiffs also move for default judgment as to their contract claims: Count Five, or

breach of contract for failure to pay fees, and Count Six, or breach of contract for failure to

comply with post-term obligations. Count Seven, which deals with attorneys' fees, is addressed

separately *infra*.

    Under Colorado law, to prevail on a breach of contract claim, the party seeking to recover

must prove the following elements: (1) the existence of a contract; (2) performance by the

plaintiff or some justification for nonperformance; (3) failure to perform the contract by the

defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053,

1058 (Colo. 1992).

    The Complaint adequately pleads the existence of a contract in the form of the Agreement

and incorporates the Agreement and the Addendum by attaching them. This court has reviewed

the contractual documents and noted the signatures of Ms. Hall as both a managing partner for

JFC and as a guarantor. Agreement at 30, 33 (ECF pagination). As discussed *supra*, the

Addendum provides that the Agreement will terminate ten years from the Effective Date of the

Agreement or on the termination date of the lease for JFC's location unless the Agreement is terminated earlier in accordance with its terms, Addendum ¶ 2, and the Effective Date is defined in the Agreement as July 18, 2018. Agreement at 3 (ECF pagination). The corresponding termination date is therefore July 18, 2028, and there is no indication that the lease for JFC's location has ended. Thus, the court concludes that a valid and enforceable contract would still exist if not otherwise terminated. There is no indication that Plaintiffs failed to permit JFC to carry out its franchise business in accordance with the terms of the Agreement before the Agreement terminated. In reviewing the Agreement, this court did not find any post-termination obligations on the part of EBBFC. Therefore, this court concludes that EBBFC performed its duties under the Agreement before the Agreement was terminated.

The court also concludes that the Agreement was properly terminated in accordance with its terms. Plaintiffs have identified a provision of the Agreement, Section 13(B)(6), which states that if JFC "fail[s] to timely pay the Royalty Fee or any other obligations or liabilities due and owing to us or our affiliates . . .", then JFC is in default and the Agreement will terminate. Section 13(C)(1) provides that JFC has "thirty (30) days after [JFC's] receipt from [EBBFC] of a written Notice of Termination within which to remedy any default hereunder, and provide evidence thereof to us," but that if JFC were to "fail to correct the alleged default within that time, this Agreement will terminate without further notice to you effective immediately when the thirty (30) day period expires." The "Royalty Fee" is defined in Section 3(B) as a fee "equal to six and one-half percent (6.5%) . . . of [the Restaurant's] Gross Sales for the immediately [preceding] calendar month." Plaintiffs have explained how JFC failed to timely pay the royalty fee, how EBBFC accordingly provided JFC with a written notice of termination, and how JFC

failed to correct the alleged default identified in the notice of termination over thirty days before Plaintiffs commenced this action. Accordingly, the Agreement was properly terminated.

The court now turns to the last two elements, *i.e.*, non-performance by Defendants and resulting damages. With regard to non-performance, as discussed *supra*, Plaintiffs allege that Defendants breached their pre-termination obligation to pay royalties. They also allege that Defendants breached their post-termination obligation to cease using the Marks, System, and Confidential Information, as set out in Section 14(B) of the Agreement, which requires, *inter alia*, that JFC "immediately cease . . . all identification and association with the [EBBFC] brand or any of the Marks . . . immediately cease using any of [EBBFC's] Confidential Information . . . [and] make any alterations to the Restaurant . . . to cease further association with the [EBBFC brand or any of the Marks . . . ." As discussed above, the unconverted facts show that Defendants failed to fully pay royalties due to EBBFC under the Agreement. The uncontroverted facts also show that Defendants continued to operate while using the Marks, the System, and perhaps the Confidential Information after the Agreement was terminated. Taking these uncontroverted facts as true, the court finds that Defendants breached Section 13(B)(6) and Section 14(B) of the Agreement by failing to pay royalties owed to Plaintiffs and by failing to cease use of the Marks after the Agreement had terminated.

In their Motion, Plaintiffs do not seek damages for Defendants' post-termination breach of obligations (other than Defendants' continued non-payment of royalties), but instead seek an injunction against Defendants enjoining them from continuing these violations. This request is discussed *infra*. Plaintiffs do, however, seek money damages for Defendants' failure to pay royalties. Plaintiffs seek $66,640.78 for royalties allegedly due and owing through November 9,

2024, the termination date. Proposed Order ¶ 2. Plaintiffs provide documentation supporting that $62,047.64 in royalties was outstanding as of September 17, 2024. ECF No. 1-4.

Accordingly, the court recommends that judgment be entered in the amount of $66,640.78 in unpaid pre-termination royalties.

### E. *Breach of Personal Guaranties*

Plaintiffs seek judgment against Ms. Hall as an individual based on her execution of the Guaranty. In the Guaranty, Ms. Hall, as the guarantor, "personally and unconditionally guarantees to [EBBFC] . . . that [JFC] will timely pay and perform each and every undertaking, agreement and covenant stated in the Agreement; and agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement." Ms. Hall affirmed the Guaranty when the Agreement was executed. This court finds that each of Plaintiffs' claims against JFC arise out of the Agreement. Accordingly, the court recommends that Ms. Hall be held jointly and severally liable with JFC.

### F. *Injunctive Relief*

In their Motion and their Amended Proposed Order, Plaintiffs seek a permanent injunction pursuant to 15 U.S.C. § 1116 and Section 17(F) of the Agreement enjoining Defendants from the following acts:

1. Using the mark "EINSTEIN BROS. BAGELS" in commerce, including without limitation in connection with any restaurant or retail food service business, any advertising, marketing, or promotion for any such business, or on any social media outlet;

2. Using in any manner any service mark, trademark, trade name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, collocations or any

combination thereof which would imitate, resemble or suggest the Marks or
Plaintiffs' trade dress;

3. Using the logo depicted below:



4. Otherwise infringing the Marks;

5. Using the Plaintiffs' trade dress, including without limitation the signage, yellow and
black colors, menu boards, Einstein Bros. cartoon characters, and distinctive menus
and menu boards;

6. Unfairly competing with Plaintiffs or any "EINSTEIN BROS. BAGELS" franchisee
or licensee, diluting the distinctiveness of the Marks or trade dress; and otherwise
injuring the plaintiff's business reputation in any manner;

7. Using any confidential information contained in the System;

8. Failing to return to the plaintiffs within fourteen (14) days of the entry of judgment all
signs, manuals, marketing materials, forms, and other materials containing the Marks;
and

9. Failing to make such alterations to the Restaurant as are necessary to deidentify and
cease association of the restaurant with the System within fourteen (14) days of the
entry of judgment.

Proposed Order ¶ 6 (minor edits for clarity). Injunctive relief for breach of any of the terms of

the Agreement is explicitly contemplated by Section 17(F) of the Agreement, which states as

follows: "if you breach or threaten to breach any of the terms of this Agreement, we will be

entitled to [ ] injuncti[ve] relief restraining such breach and/or a decree of specific performance

. . . ." The Agreement states in Section 14(B) that once the Agreement is terminated, JFC is

obligated to (1) cease "all identification and association with the [EBBFC] brand or any of the

Marks"; (2) "immediately cease using any of [EBBFC's] Confidential Information in any format it may appear and return to us (or, at our option, destroy or electronically delete) all electronic or hard-copy documents in your possession that contain Confidential Information"; (3) "destroy or deliver to [EBBFC] within fifteen (15) days all signs, marketing materials, forms, and other materials we request containing any Mark"; (4) "make the alterations to the Restaurant we specify in our Operations Manual (or otherwise) to cease further association with the [EBBFC] brand or any of the Marks"; and (5) "comply with all other applicable provisions of this Agreement . . . ."

It is uncontroverted that despite the termination of the Agreement, Defendants have not abided by these obligations, which cover each of the acts that Plaintiffs propose enjoining above. Therefore, the court recommends that the forms of injunctive relief requested by Plaintiffs, as set forth above, be granted.

### G.  *Pre-Judgment Interest*

The Agreement provides for interest to be paid on any payment due to EBBFC not received by the applicable due date. In cases when payment is not received by the due date, the Agreement provides in Section 3(C) that JFC "agree[s] to pay [EBBFC], in addition to the overdue amount, interest on the overdue amount from the date it was due until paid, at the rate of one and one-half percent (1.5%) per month (but not to exceed any maximum rate permitted by law, if any)." Plaintiffs claim $24,686.21 in interest for the period through April 3, 2025 and provide a chart supporting this amount. ECF No. 20-13. The court has reviewed this chart and finds no error. Accordingly, the court recommends that pre-judgment interest be awarded to

Plaintiffs in the amount of $24,686.21, together with further pre-judgment interest on the unpaid

royalties at the rate of 1.5% per month from April 3, 2025 until the date of judgment.

H.  *Post-Judgment Interest*

Plaintiffs also seek post-judgment interest at a rate of 18% per annum on "all unsatisfied

portions of the monetary judgment." Proposed Order ¶ 5. Post-judgment interest on unsatisfied

portions of a money judgment is typically awarded at the rate specified in 28 U.S.C. § 1961. "An

agreement to apply a post-judgment interest rate other than that § 1961 specifies is enforceable

so long as the parties indicate their intent to override the statute using 'clear, unambiguous and

unequivocal language.'" *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1276–77

(10th Cir. 2010) (quoting *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005). Here,

the parties did not indicate an intent to override the statute. Accordingly, the court recommends

awarding Plaintiffs post-judgment interest for the time period going forward from the entry of

judgment in this case at the current federal rate pursuant to 28 U.S.C. § 1961. *See, e.g.*, *Pope v.

Integrated Assocs. of Denver, Inc.*, No. 1:21-cv-02081-LTB-SBP, 2024 WL 982588, at *10 (D.

Colo. Jan. 16, 2024), *report and recommendation adopted*, 2024 WL 5677750 (D. Colo. Apr. 8,

2024); *Hosier v. Citigroup Global Markets, Inc.*, 858 F. Supp. 2d 1206, 1209 n.3 (D. Colo. 2012)

(state law governs prejudgment interest upon confirming arbitration award, but federal law

governs post-judgment interest).

I.  *Attorneys' Fees and Costs*

Finally, the court considers Plaintiffs' request for attorney's fees in the amount of

$24,975.00 and costs in the amount of $443.60[2] on behalf of attorney James Rubinger, ECF No. 20-14, as well as Plaintiffs' request for attorney's fees in the amount of $16,093.00 and costs in the amount of $406.00 on behalf of attorney Harold Bruno III. ECF No. 20-16. The total request for attorneys' fees and costs equals $41,917.60. The requests are made pursuant to Section 17(C) of the Agreement, which provides:

> In the event of any legal proceeding regarding a breach or default under this Agreement, the prevailing party in that proceeding (as determined by the trier-of-fact) is entitled to receive from the other party all damages, costs and expenses, including reasonable legal fees incurred by the prevailing party in connection with obtaining any remedy available to the prevailing party for any violation of this Agreement and in obtaining injunctive or other relief to enforce any provisions of this Agreement.

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee. The lodestar calculation is the product of a number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The party seeking an award of fees bears the burden of demonstrating the reasonableness of the hours billed and rates charged. *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). To carry this burden, the party must "submit[ ] meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir.

---

[2] Although Mr. Rubinger's affidavit states that he expended $443.80 in costs, ECF No. 20-14 ¶ 5, the documentation he provides supporting those costs reflects that he expended a total of $443.60. ECF No. 20-15 at 5.

1998). Ultimately, a court has considerable flexibility in determining what is a reasonable amount of any fee award, and such determinations are reviewed under the deferential abuse-of-discretion standard. *See, e.g.*, *Kerner v. City & Cnty. of Denver*, 733 F. App'x 934, 935-39 (10th Cir. 2018).

Mr. Rubinger requests a rate of $450 per hour. ECF 20-14. Mr. Bruno requests a rate of $450 per hour for work he performed in 2024 and $475 an hour for work he performed in 2025. ECF 20-16 Mr. Bruno also requests a rate of $295 per hour for work performed by associate Gianna Rossi and $125 per hour for work performed by paralegal Jared Hamrick. *Id*. The court finds that Plaintiffs have readily demonstrated the reasonableness of the rates charged by its attorneys and support staff. The hourly rates charged by Plaintiffs' attorneys, set at $295 for an associate, ranging between $450-475 for the two partners, and set at $125 per hour for a paralegal, are well within the range that courts in this District have deemed reasonable. *See, e.g.*, *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-00304-WJM-NRN, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (collecting cases and noting that "hourly rates—ranging from $365 to $895 for attorneys, and $250 to $275 for support staff—are lower than hourly rates previously approved by this Court and others within the District").

Plaintiffs submit that their attorneys and paralegals have billed a combined total of 92.10 hours in this matter. In considering the hours submitted by Plaintiffs, the court considers factors such as whether the fees pertain to tasks ordinarily billed to clients, whether the tasks were necessary, or whether there is redundant or excessive work being done. The court has reviewed the billing records submitted in support of the Motion, ECF Nos. 20-15, 20-17, and does not detect any duplicative billing or excessive time spent on tasks. Consequently, the court

recommends that Plaintiffs be awarded the full amount of the attorney's fees sought in their Motion.

Finally, Plaintiffs request a combined $849.60 in costs. Plaintiffs have sufficiently documented their costs incurred, and the court notes that the bulk of those costs is attributable to the filing fee in this court and service on Defendants. *See* ECF Nos. 20-15 at 5, 20-17 at 2-3. Accordingly, the court recommends that Plaintiffs be awarded $849.60 in costs.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that: (1) Plaintiffs' Motion for Default Judgment against all Defendants be **GRANTED**; and (2) Default judgment be **ENTERED** against all Defendants as follows:

    (a) $14,254.13 for Plaintiffs' claims of trademark infringement and unfair competition;

    (b) $66,640.78 for Plaintiffs' contract damages;

    (c) Pre-judgment interest in the amount of $24,686.21, together with further pre-judgment interest on Plaintiffs damages at the rate of 1.5% per month from April 3, 2025 until the date of judgment;

    (d) Post-judgment interest at the rate specified in 28 U.S.C. § 1961;

    (e) $24,975.00 in attorneys' fees and $443.60 in costs for attorney James Rubinger's work on behalf of Plaintiffs, together with $16,093.00 in attorneys' fees and $406.00 in costs for attorney Harold Bruno III's work on behalf of Plaintiffs; and

(f)  A permanent injunction pursuant to 15 U.S.C. § 1116 and Section 17(F) of the

Agreement enjoining Defendants from the acts delineated in § IV.F.(1)-(9) of this

recommendation.[3]

DATED: June 9, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[3] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").